UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Manuel Edgavdo Jovet Ortiz,

    Plaintiff,

v.

                                       **MEMORANDUM OPINION AND ORDER**
                                       Civil No. 11-674 (MJD/SER)

Dakota County et al.,

    Defendants.

_____

    Michael M. Bader, Michael M. Bader, LLC, Counsel for Plaintiff.

    Kathryn M. Keena and Andrea G. White, Assistant Dakota County Attorneys, Counsel for Defendants.

_____

This matter is before the Court on Plaintiff's motion to file an amended complaint (Doc. No. 34) and Defendants' motions for summary judgment (Doc. No. 23) and to strike Plaintiff's expert affidavits. (Doc. No. 43)

**I.    Background**

Plaintiff was arrested in April 2009 for violating a restraining order. The court ordered Plaintiff to undergo a mental health evaluation pursuant to Rule 20 of the Minnesota Rules of Criminal Procedure at the Dakota County Jail. Plaintiff arrived at the jail on April 27, 2009, and was initially placed on suicide watch as

1

he appeared very depressed. Plaintiff also suffers from chronic diabetes. After he was taken off suicide watch, he was booked into the jail. When he arrived at the jail, jail staff filled out an intake form and nursing staff, including Gina Huppert, filled out various health forms. Plaintiff alleges that when he arrived at the jail, he was wearing prescription orthotic shoes to address neuropathy in his feet due to his chronic diabetes. He was not allowed to wear these shoes by jail staff, however. Plaintiff alleges that as a result of being forced to wear jail issued shoes, his foot became infected. Despite the infection being treated while he was in jail, Plaintiff ultimately had to have the big toe on his right foot amputated.

In his original complaint, Plaintiff asserted a number of claims against Dakota County, the Dakota County Sheriff and Chief Deputy Sheriff, the Commander of Detention Services, the jail supervisor and Sergeants John and Jane Doe and Officers John and Jane Doe: Count I - violations of the Eighth and Fourteenth Amendment - deliberate indifference to medical needs against all defendants; Count II - Defendants Don Gundmundson, Dave Bellows, Brad Jeska, Lawrence Hart, Richard Doe, Sergeant John Doe and Sergeant Jane Doe, as supervisors at the jail, violated Plaintiff's civil rights; Count III - Dakota County violated his civil rights by failing to train its officers to adhere to those policies

adopted to address medical care to inmates and detainees; Count IV - § 1983 - deliberate disregard of serious medical needs; Count V - Monell claim against Dakota County; Count VI - disability discrimination; Count VII - negligence; Count VIII - loss of consortium.

By Order dated June 22, 2012, the loss of consortium claim was dismissed with prejudice pursuant to the stipulation of the parties.

## II.     Motion to Amend the Complaint

The deadline to file motions to amend pleadings was July 15, 2012 and the deadline to file dispositive motions was December 15, 2012. (Doc. No. 16). Defendants filed a motion for summary judgment on November 28, 2012. Plaintiff was granted an extension to file his opposition to the summary judgment motion. (Doc. No. 33.) On January 8, 2013, Plaintiff filed his opposition to the motion for summary judgment and also filed a motion to amend the complaint. By the amended complaint, Plaintiff seeks to dismiss all claims against the individual defendants, add an individual defendant, Gina Huppert, and dismiss counts II (civil rights violations by supervisors), III (failure to train against Dakota County), V (deliberate indifference by Dakota County - Monell claim), and VI (disability discrimination).

The claims included in the amended complaint are as follows: Count I - Violations of Eighth and Fourteenth Amendment against Huppert for acting with indifference as to Plaintiff's medical needs; Count II - 42 U.S.C. § 1983 against Huppert for acting with deliberate disregard and indifference to Plaintiff's serious medical needs; and Count III - that Dakota County, through its jail employees and nursing staff, had a duty to protect Plaintiff from harm and to provide reasonable medical care, that Defendants knew or should have known that failure to allow Plaintiff to wear his prescription shoes would cause him harm and that Plaintiff was harmed by Defendants' refusal to allow him to wear such shoes.

### A. Standard for Motions to Amend Complaint

"A decision whether to allow a party to amend her complaint is left to the sound discretion of the district court and should be overruled only if there is an abuse of discretion." <u>Bell v. Allstate Life Ins. Co.</u>, 160 F.3d 452, 454 (8th Cir. 1998). Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "Proper justification for denying such a motion includes: "undue delay, bad faith or dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of

amendment." Id. Where an amendment involves "new theories of recovery and impose additional discovery requirements, courts are less likely to find an abuse of discretion due to the prejudice involved." Id.

Here, the motion to amend the complaint was filed after the deadline for such motions as set forth the Amended Pretrial Scheduling Order. (Doc. No. 16.) Under these circumstances, Plaintiff must demonstrate good cause as required under Rule 16(b)(4) of the Federal Rules of Civil Procedure.

> When a party seeks to amend a pleading after the scheduling deadline for doing so, the application of Rule 16(b)'s good-cause standard is not optional. To permit district courts to consider motions to amend pleadings under Rule 15(a) without regard to Rule 16(b) "would render scheduling orders meaningless and effectively ... read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure."

Sherman v Winco Fireworks, Inc., 532 F.3d 709, 716 (8th Cir. 2008) (citations omitted). "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." Id. at 717. If the Court finds that the movant has been diligent, prejudice to the nonmoving party is not considered. Id.

    B.    **Analysis**

Plaintiff argues that Defendants will not be prejudiced by the amended

complaint as they were on notice that Plaintiff might seek to add Nurse Gina Huppert six months ago and that no additional discovery will be needed. As set forth above, however, the standard is not whether Defendants will be prejudiced by the allowance of an amended complaint. Rather, Plaintiff must demonstrate good cause for failing to file the motion prior to the deadline set forth in the relevant pretrial scheduling order. Defendants argue that Plaintiff cannot meet this burden.

For example, as of February 7, 2012, Plaintiff had possession of a jail report dated May 28, 2009 which was signed by "Nurse Gina." (Affidavit of Andrea White, Ex. 4 (Response to Interrogatories ).) Further, in a discovery response dated March 1, 2012, Defendants identified Gina Wollman n/k/a Huppert. (Id. Ex. 5.) Finally, Plaintiff deposed Gina Huppert on May 22, 2012. Defendants argue that as Plaintiff has failed to demonstrate diligence in amending the complaint to add Huppert, the motion should be denied.

Plaintiff asserts that he was not dilatory in filing a motion to amend the complaint six months after the deadline for such motions had passed. The Court finds that the record demonstrates otherwise. Plaintiff concedes that he contemplated adding Huppert as a defendant prior to the July 15, 2012 deadline.

(Bader Aff. ¶ 3 ("Following the deposition of Nurse Gina Huppert on May 22, 2012 your affiant spoke with attorney Andrea White by phone concerning two issues; (1) signing a stipulation to dismiss co-plaintiff Zaida Torres-Caraballo's consortium claim and stipulate to include Nurse Huppert as an individual defendant and likely dismiss all of the defendant except Dakota County after the deposition of Lieutenant Lawrence Hart").) Plaintiff now claims that he needed to first depose Lt. Hart and obtain the jail file prior to moving to add Huppert, yet Plaintiff has failed to demonstrate how Hart's deposition testimony, or the jail file[1], was necessary to the determination to add Huppert as a defendant. Under these circumstances, Plaintiff has failed to demonstrate good cause under Rule 16(b). Accordingly, the motion will be denied.

### III. Motion for Summary Judgment

#### A. Standard

Under Rule 56(b) of the Federal Rules of Civil Procedure, "a party against whom relief is sought may move at any time, with or without supporting

---

[1] Plaintiff asserts that at his deposition, Lt. Hart brought a jail file that included a state court order that Plaintiff be provided an interpreter during his mental health evaluation. (Bader Aff. Ex. 53.) Plaintiff asserts that at the time of Lt. Hart's deposition, he did not have a copy of this order, and did not get a copy until December 2012. Plaintiff has not demonstrated, however, how this particular order was necessary to the determination to add Huppert as a defendant.

7

affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b)(2008). Furthermore, "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleadings; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2).

Plaintiff has agreed that Counts 2, 3, 5, 6 and 8 should be dismissed, and that the individual defendants should also be dismissed. (Doc. No. 39 (Opp. Brief at 5).) Plaintiff also concedes that in the event his motion to add Huppert as a defendant is denied, Counts 1 and 4 should also be dismissed. (Id.) Accordingly, the only claim remaining is Count 7, a negligence claim against Dakota County.

**B.     Negligence**

Plaintiff asserts that the County had a duty to protect Plaintiff from harm, and to provide him reasonable medical care consistent with County policies and procedures. Plaintiff further alleges that County failed to execute those policies and procedures when, despite repeated requests, Plaintiff was not allowed to wear his prescription shoes while in jail and was forced to wear jail shoes that caused harm to his feet. (Comp. ¶¶ 65-68.)

Defendants assert they are immune from liability pursuant to Minnesota law. Specifically, a municipality is not subject to liability for any claim that is "based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn. Stat. § 466.03, subd. 1 and 6. Plaintiff argues that the conduct that forms the basis of his negligence claim did not involve a discretionary function or duty. Rather, the conduct complained of is an operational function.

While incarcerated, Plaintiff does not dispute that he received medical care for any medical conditions he had, including diabetes and mental health services. Plaintiff's claim is based solely on the fact that he was not immediately given his prescription shoes - shoes that he was wearing when brought to the jail. Plaintiff

testified at his deposition that he told Huppert and a correctional deputy that he had prescription shoes. (Defense Ex. 9 (Plaintiff Dep. at 118).) Plaintiff further testified that the above correctional deputy provided him the "Request for Health Service" form to request his shoes. (Id. at 85.) Plaintiff filled out this form on April 30, 2009 as follows: "I'm having problems with feeling in my feet my right to be specific. I'm a diabetic that's probably the reason. Need to see a nurse normally wear shoes." (Defense Ex. 31.) The next day, Huppert noted on this form "Yes, you may have our gym shoes due to your medical condition." (Id.) There is no mention of "prescription" or "special" shoes on the form.

When given the jail gym shoes, Plaintiff testified that he told jail staff that he could not wear those shoes. (Defense Ex. 9 (Plaintiff Dep. at 90).) He nonetheless wore the shoes, and by the end of the day, his right toe was swollen "like a bag full of water" and his shoe was full of blood. (Id. at 91.) Staff notified the nursing station, and his foot was bandaged. (Id.) Plaintiff's name was also placed on the list to see the doctor on May 28, 2009. (Defense Ex. 11.) Although he received treatment for his toe while he remained in jail, and was finally allowed to wear his own shoes, his toe was ultimately amputated in July 2009. (Defense Ex. 37; Ex. 45.)

Plaintiff also testified at his deposition that because he did not have his shoes while at the jail, he initially only wore socks. (Defense Ex. 9 (Plaintiff Dep. at 85).) On one occasion, one of the deputies asked him where his sandals were, as inmates had to wear footwear. (Id.) Plaintiff responded that he couldn't wear the sandals, and that he wore special shoes because of his diabetes. (Id.) When the deputy told him he could not go around barefoot in jail, Plaintiff stated "send for my special shoes and then I'll be very happy to go around wearing my special shoes." (Id.) Plaintiff further testified that when he filled out the "Request for Inmate Health Services" form, he had another inmate fill it out, as Plaintiff cannot read and write English. (Id. at 86.) Although he requested to see the nurse on this form, Huppert did not see Plaintiff, but she did authorize Plaintiff to wear jail gym shoes. (Defense Ex. 31.) Even though Huppert authorized Plaintiff to wear jail gym shoes on May 1, 2009, Plaintiff did not receive the gym shoes until May 26, 2009.

Plaintiff further asserts that had he been provided an interpreter at the time of intake, the jail would have had a more accurate and complete list of Plaintiff's medications and a precise understanding of his medical condition. Plaintiff asserts it is clear from the record that he does not communicate effectively in

11

English, and that an interpreter was necessary. When he attempted to inform jail staff of his special shoes, he was not able to clearly communicate the fact that special shoes were prescription shoes, because of his difficulties speaking and writing in English. (Plaintiff Dep. at 78-79; Plaintiff Aff.)

The Court finds that based on the allegations and the record thus far, the conduct that forms of the basis of Plaintiff's negligence claim is not based on the performance or failure to perform a discretionary function. "Statutory immunity applies only when the challenged government activity originated from a balancing of political, social and economic factors. In contrast, operational or day-to-day decisions involving the application of scientific or technical skills are not protected by statutory immunity." Angell v. Hennepin Cty Reg. Rail Auth. 578 N.W.2d 343, 346 (Minn. 1998) (citing Nusbaum v. Blue Earth County, 422 N.W.2d 713, 722 (Minn. 1988)).

The alleged failure of Huppert and others at the jail to provide him his prescription shoes, or to ensure that he was seen by medical personnel, was not a discretionary act. Instead, the decisions that resulted in him not receiving his prescription shoes were operational - a failure to follow clearly defined policy for providing medical treatment. The County's written policy concerning health care

at the jail specifically provides that "Inmates who enter the facility with prosthetics (limbs, wheelchairs, braces, orthopedic shoes) will be allowed to keep them once they have been examined for contraband and verified as medically necessary." (Defense Ex. 26, at 3 (D0364).) While the County argues that Plaintiff did not inform staff of his prescription shoes, Plaintiff asserts that he did inform jail staff of his shoes, and that he completed the necessary health request form in order to obtain his shoes. Because there are fact questions as to whether jail personnel failed to follow clearly defined policy and procedures, summary judgment will be denied.

**Defendants' Motion to Strike**

Pursuant to the relevant scheduling order, expert disclosures were due on or before July 15, 2012. (Doc. No. 16.) The scheduling order further provided that written reports signed by such experts be completed on or before August 15, 2012. (Id.) Although Plaintiff timely identified his expert witnesses, Defendants assert that he did not submit written reports from the experts on or before August 15, 2012. Expert depositions were to be completed on or before October 15, 2012. Defendants assert they could not depose Plaintiff's experts until after the required written reports were submitted. Since Plaintiff did not submit such

reports, Defendants did not depose Plaintiff's experts.

Defendants argue that because Plaintiff did not provide written expert reports as required by the Federal Rules of Civil Procedure and the Court's scheduling order, the Court should strike the affidavits of Dr. Ryan Pfannenstein and Michael Tillges.

In response, Plaintiff asserts that the signed, but undated, expert report of Dr. Pfannenstein was sent to Defendants by prior counsel in December 2009. (Daly Aff. ¶ 2, Ex. A.)  Plaintiff asserts that he submitted the affidavit of Michael Tillges on August 31, 2012.  Defendants thus had the necessary information to depose Plaintiff's experts, and cannot claim prejudice because it chose not to depose them.

The record before the Court does not warrant striking Plaintiff's experts. To avoid any prejudice to the Defendants, the Court will reopen discovery for a limited period of time to allow Plaintiff's experts to be deposed.

IT IS HEREBY ORDERED that:

1. Plaintiff's Motion to Amend the Complaint [Doc. No. 34] is DENIED;

2. Defendants' Motion for Summary Judgment [Doc. No. 23] is

    GRANTED in part and DENIED in part as follows; Counts 1 through

6 are DISMISSED WITH PREJUDICE as against all Defendants, and Count 7 is DISMISSED WITH PREJUDICE as against all individual defendants. The motion for summary judgment is denied as to Dakota County in Count 7.

3. Defendants' Motion to Strike [Doc. No. 43] is DENIED.

4. This matter is referred to the Magistrate Judge to set new deadlines for expert depositions.

Date: May 7, 2013

                                  s/ Michael J. Davis
                                  Michael J. Davis
                                  Chief Judge
                                  United States District Court